UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JASPER NORMAN,

                         Plaintiff,                Civ. Act. No. _____

            - against -

WHITE PLAINS HOSPITAL and                **COMPLAINT and**
MONTEFIORE HEALTH SYSTEM,           **DEMAND FOR JURY**
                                                **TRIAL**

                           Defendants.
-------------------------------------------------------------------X

## COMPLAINT

     Plaintiff, JASPER NORMAN, through undersigned counsel, sues Defendants, WHITE PLAINS HOSPITAL and MONTEFIORE HEALTH SYSTEM and alleges the following upon information and belief:

## NATURE OF THE ACTION

1.   Jasper Norman ("Mr. Norman" or "Plaintiff") is deaf and communicates through American Sign Language. In addition, Plaintiff is also legally blind. As such Plaintiff is a qualified individual with a disability under the relevant statutes. This action is on behalf of Mr. Norman for declaratory and injunctive relief and monetary damages to redress the injuries Mr. Norman has suffered as a result of being discriminated against by Defendant(s) on the basis of disability, record of disability and/or perceived disability under the Americans with Disabilities Act ("ADA"); Section 504 of the Rehabilitation Act, New York State Human Rights Law, to remedy injuries Plaintiff has suffered as a result of being discriminated against, and deprived of public services and public accommodations due to his disability. Mr. Norman was admitted to White Plains Hospital for approximately five days for medical treatment due to serious back pain/injury. During this entire

time he was deprived of an American Sign Language interpreter and/or auxiliary communication aids. Without the benefit of a qualified interpreter, Plaintiff had little to no knowledge of his diagnosis, treatment and prognosis. The Complaint states causes of action under federal, state, and city law for deprivations of civil rights and states common law causes of action for tort.

## JURISDICTION AND VENUE

2.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this action arises under federal law, including the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 *et seq*. and Section 504 of the Rehabilitation Act pursuant to 29 U.S.C. §794 *et seq*

3.   Plaintiff invokes the pendant jurisdiction of this Court pursuant to Gibb, 38 U.S. 715 (1966) and 28 U.S.C. § 1367(a) for state law claims of the New York State Human Rights.

4.   The Plaintiff, JASPER NORMAN, brings this action under elated state and federal laws seeking compensatory damages, injunctive relief, and attorney's fees for the Defendants' violation of his rights afforded by the United States and New York Constitution and under the laws of The State of New York.

5.   The venue of this action is properly placed in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because the events having operative significance in this case which give rise to the claims herein occurred within this District.

6.   This Court has *in personam* jurisdiction over Defendants because they are located in, conducts operations within, transacts business in and provides services within the State of New York.

## PARTIES

7.   Plaintiff is a resident of the State of New Jersey and resides at 137 Jewell Street Apt. 3, Garfield, New Jersey.

8.   At all times material herein, defendant WHITE PLAINS HOSPITAL (hereinafter referred to as "WPH"), is located at 20 Davis Ave, White Plains, New York 10601.

9.   At all times material herein, defendant MONTEFIORE HEALTH SYSTEM, ( hereinafter referred to as "MHS") is located at 111 East 210th Street, Bronx, New York, 10467.

## <u>MATERIAL FACTS</u>

10. At all times material herein, Plaintiff was deaf and blind and his primary language was and remains American Sign Language. Plaintiff's ability to read, comprehend and write in English is limited. Although Plaintiff resides in New Jersey, he goes to White Plains Hospital for medical treatment as he has sought and received medical treatment there for his entire life having grown up close to White Plains hospital and feels they can best provide the care he requires as they have his  medical records.

11. On December 11, 2022, Plaintiff was admitted to WPH with severe back pain and difficulty walking. During the initial intake Plaintiff requested a tactile sign language interpreter but one was not provided. Plaintiff instead had to rely on an app on his phone to type back and forth in extremely large words inputted one at a time due to his limited vision which resulted in very limited communication. Due to plaintiff's severe back pain, he was unable to continue to engage in this limited communication method.

12.  During intake, medical staff were unable to obtain a complete medical history due to lack of effective communication.

13. Plaintiff was admitted to the hospital after several hours in the emergency room. Plaintiff's father was present with him at times, but Plaintiff did not want staff communicating with his father

about his medical care.  Plaintiff continued to repeatedly request that a tactile sign language interpreter be present and was denied same.

14. Within the course of the next few days, Plaintiff went through multiple tests and procedures to try to determine what was causing his severe pain. Plaintiff continued to have very limited communication through the app or Video Remote Interpreter system which often he could not see and understand due to his limited vision.

15. During one procedure, on December 14th, medical staff pulled Plaintiff's pants down and inserted a suppository without any explanation. After Plaintiff was physically violated he was in shock and extremely upset and felt humiliated.  Plaintiff put up a struggle using his voice to yell,which he never uses on an ordinary basis, as he felt he was being raped.  Afterward, plaintiff demanded that medical staff not touch him again nor provide any medical treatment without an interpreter to first explain what was going to happen, as all his previous requests for an onsite tactile interpreter had been denied. me use an interpreter to explain medical procedures. This physical assault caused Plaintiff severe physical pain and trauma.

16. Despite Plaintiff requesting medical staff to to use an interpreter to explain medical, the next day staff gave him a steroid shot without a qualifed interpreter being present to explain the procedure. The only person staff relied upon for communication with Plaintiff was his blind/deaf friend who also requires a tactile sign language interpreter for effective communication.

17.  During Plaintiff's entire first five days, despite multiple requests for a tactile sign language interpreter, none was provided. Instead, hospital staff relied upon plaintiff's app or the Video Remote Interpreter via an IPAD, at times, which resulted in ineffective communication. Hospital staff then began to speak with Plaintiff's father about his medical condition, despite the fact that plaintiff is an adult and had explicitly requested that the staff not communicate with his father.

18. Finally, on December 15th, the night before Plaintiff's discharge, a tactile sign language interpreter arrived. She explained to Plaintiff that she was called by the hospital on the first night of his hospitalization, and in fact was on her way to the hospital the first night, but was then directed by the hospital not to arrive at the hospital to serve as an interpreter because the hospital  had another  interpreter who was providing tactile interpreter services for the patient. . She also explained how the next day she spoke with the staff at the hospital again and that she told the hospital she would come to the hospital on her own whenever they needed her, (if they did not want to hire her through her agency) however he hospital once again declined her services.  This tactile interpreter who had been available from the first day of Plaintiff's admission was finally only called after Plaintiff yelled at the staff after being physically violated without explanation. The interpreter spent two hours with plaintiff the night before his discharge, then two hours again the next day during discharge.

19. Each and all of the above acts, both of omission and commission, were intentional acts of discrimination which reveal clear deliberate indifference to the rights and feelings of the Plaintiff and each and all were a proximate cause of the damages suffered by Plaintiff.

### FIRST CLAIM FOR RELIEF
**Discrimination on the Basis of a Disability in
Violation of the Rehabilitation Act (29
U.S.C. § 794 *et. seq.*)**

20.      Plaintiff re-alleges and incorporates by reference each and every allegation above as if fully set forth herein.

21.      The purpose of the Rehabilitation Act is to ensure that no "qualified individual

5

with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded

from the participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

22.     At all times relevant to this action, the Rehabilitation Act, 29 U.S.C. § 794 *et*

*seq.*,was in full force and effect and applied to Defendants' conduct.

23.     Plaintiff Jasper Norman is a qualified individual with a disability within the meaning

of the Rehabilitation Act. 29 U.S.C. § 705(9)(B); 42 U.S.C. 12102.

24.     Defendants receive federal financial assistance within the meaning of the

Rehabilitation Act. 29 U.S.C. § 794(a).

25.     The Department of Health and Human Services regulations implementing the

Rehabilitation Act clarify the requirements for federal financial assistance recipients, such as

Defendants, stating that "[a] recipient . . . that employs fifteen or more persons shall provide

appropriate auxiliary aids to persons with impaired sensory ... or speaking skills, where necessary

to afford such persons an equal opportunity to benefit from the service in question." 45 C.F.R §

84.52(d)(1).

26.     Appropriate auxiliary aids include, but are not limited to, interpreters. 45

C.F.R. § 84.52(d)(3).

27.     Defendants failed to comply with the Rehabilitation Act by refusing to provide to

deaf and hard of hearing individuals, including Mr. Norman:

- qualified interpreters;
- auxiliary aids and services;
- displays indicating availability of ASL interpreters;
- forms to ensure ability of individuals to designate ASL as their primary language;
- trained staff regarding the methods of communication employed by the deaf and hard of hearing, and how to ensure effective communications at its medical center;
- the provision/designation of an interpreter-ADA accessibility coordinator who would evaluate the needs of any deaf or hard of hearing individuals;

- policy and procedure to ensure compliance with the law;
- means of monitoring and reporting non-compliance with the law.

28.     The above are examples of techniques employed by other institutions to provide access to services, programs, benefits, activities and facilities for deaf and hard of hearing people in a manner consistent with the Rehabilitation Act and the ADA.

29.     Defendants refused to provide sign language interpreters during Mr. Norman's stay at Defendants' facilities.

30.     Mr. Norman requested an interpreter during his medical care and stay at Defendants' facilities.

31.     Mr. Norman was unable to effectively communicate with Defendants' staff, and he was excluded from discussions and decisions relating to his treatment and evaluation at Defendants' premises, which would have directly benefitted Mr. Norman, and which were provided to other hospital patients.

32.     As a proximate result of Defendants' violations of Mr. Norman's rights under the Rehabilitation Act, Mr. Norman has suffered discrimination, unequal treatment, exclusion, violations of her rights under the laws of the United States, loss of dignity, frustration, humiliation, emotional pain and suffering, anxiety, embarrassment, prolonged physical pain and unnecessary loss of rights, privileges and property, among other harms.

33.     Defendants' failure to comply with the Rehabilitation Act has resulted in harm to Mr. Norman.

34.     As a result of Defendants' breaches of law, Mr. Norman   has been damaged and injured and demands compensatory damages and injunctive relief consistent with the reasonable accommodations noted above requiring the Defendants to operate in compliance with applicable laws and regulations.

## SECOND CLAIM FOR RELIEF

**Discrimination on the Basis of a Disability in Violation of
Title III of the Americans with Disabilities Act of 1990
(42 U.S.C. § 12181 *et seq*.)**

35.     Plaintiff re-alleges and incorporates by reference each and every allegation above as if fully set forth herein.

36.     Title III of the ADA requires that, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

37.     Plaintiff Jasper Norman is a qualified individual. Mr. Norman has a "disability" within the meaning of 42 U.S.C. § 12132(2).

38.     Defendants' business is a place of "public accommodation" within the meaning of the ADA.  42 U.S.C. § 12181(7)(F).

39.     Defendants own, lease (or lease to), or operate places of public accommodation. 42 U.S.C. § 12182(a).

40.     Under Title III of the ADA, discrimination is identified, in part, as "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, . . . or otherwise treated differently than other individuals because of the absence of auxiliary aids and services."  42 U.S.C. § 12182(b)(2)(A)(iii).

41.     As described above, Defendants subjected Plaintiff to discrimination based upon Mr. Norman's disabilities in violation of his rights under Title III of the ADA.

42.     Defendants failed to provide Mr. Norman with auxiliary services in the form of qualified interpreters.

8

43.     Defendants failed to ensure that Mr. Norman was not excluded, denied services, or otherwise treated differently than other individuals as required by 42 U.S.C. § 12182(b)(2)(A).

44.     Defendants discriminated against Mr. Norman by refusing to provide Mr. Norman with qualified tactile sign language interpreters during his evaluation and treatment.

45.     Defendants treated Mr. Norman differently than hearing individuals by not providing Mr. Norman the necessary auxiliary services that would enable him to effectively communicate with staff during her evaluation and treatment at Defendants' premises.

46.     As a proximate cause of Defendants' violations of Mr. Norman's rights under Title III of the ADA, Mr. Norman has suffered discrimination, unequal treatment, exclusion, violations of his rights under the laws of the United States, loss of dignity, frustration, humiliation, emotional pain and suffering, anxiety, embarrassment, and unnecessary loss of rights, privileges, and property.

47.     As a result of the Defendants' breaches of law, Mr. Norman has been damaged and injured and demands injunctive relief consistent with the reasonable accommodations noted above requiring the Defendants to operate in compliance with applicable laws and regulations.

### THIRD CLAIM FOR RELIEF
**New York State Human Rights Law**
**(N.Y. Exec. Law § 292)**

48.     Plaintiff re-alleges and incorporates by reference each and every allegation above as if fully set forth herein.

49.     Plaintiff Jasper Norman has a "disability" as defined in New York State Human Rights Law Section 292 (21), in that he is deaf.

50.     White Plains Hospital is a "place of public accommodation" within the meaning of NY State Human Rights Law § 292 (9).

51.     Montefiore Health System is a "place of public accommodation" within

the meaning of NY State Human Rights Law § 292 (9).

52.     Defendants discriminated against Mr. Norman based on Mr. Norman's disability in

"directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations,

advantages, facilities and privileges of any such place" of public accommodation.  NY State

Human Rights Law § 296 (2-a).

53.     Defendants discriminated against Mr. Norman based on Mr. Norman's disability

and failed to make "reasonable accommodations" for his disability.  NY State Human Rights Law

§ 292 (21).

54.     Defendants' failure to comply with the New York State Human Rights Law

has resulted in harm to Mr. Norman.

55.     By reason of the foregoing, Plaintiff Jasper Norman demands compensatory

damages and injunctive relief consistent with the reasonable accommodations noted above

requiring Defendants to operate in compliance with applicable laws and regulations.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a.     Enter such declaratory and injunctive relief under Title III of the ADA, Section

504 of the Rehabilitation Act and New York State Human Rights Law, against Defendants and in

favor of Plaintiff as it deems appropriate to remedy past violations of the laws of the United States

and to prevent future violations of the same, including making available to deaf and hard of hearing

individuals, among other forms of relief:

- qualified interpreters;
- auxiliary aids and services;
- displays at Defendants' facility indicating availability of ASL interpreters;

- modification of health forms to ensure ability of individuals to designate ASL as their primary language;
- training for Defendants' staff regarding the methods of communication employed by the deaf and hard of hearing, and how to ensure effective communications at its medical center;
- provision/designation of an interpreter-ADA accessibility coordinator at Defendants' who would evaluate the needs of any deaf or hard of hearing individuals;
- changes in policy and procedure to ensure compliance with the law;
- implementation of means of monitoring and reporting non-compliance with the law.

b.      Enter judgment against the Defendants and in favor of Plaintiff for such compensatory damages as suffered by Plaintiff under Section 504 of the Rehabilitation Act including physical pain and suffering, loss of opportunity, dignitary harm and/ornominal damages as well as  prejudgment interest and such further relief as this Honorable Court deems just and equitable;

c.      Enter judgment against the Defendants and in favor of Plaintiff for such compensatory damages suffered by Plaintiff including emotional distress, physical pain and suffering, loss of opportunity, dignitary harm,  and/or nominal damages as well as prejudgment interest and punitive damages as suffered by Plaintiff pursuant to the New York State Human Rights Law;

d.      Enter judgment against the Defendants and in favor of Plaintiff for the costs of litigation, including reasonable attorneys' fees and costs;

e.      Award Plaintiff any further relief the Court deems appropriate.

## **JURY DEMAND**

 Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby requests a trial by jury as to each and every claim for which they are so entitled.

    Dated:  June 2, 2023
             New York, New York

11

Respectfully submitted,

By:   /s/ Clara R. Smit_____          By:  /s/ Bruce Gitlin_____
Clara R. Smit, Esq.                         Bruce Gitlin, Esq.
100 Horizon Center Blvd                     Bruce J. Gitlin, P.C.
Hamilton, NJ, 08691                          Suite 411
                                             2095 Broadway
 (732) 843-6600                             New York, NY 10023

                                             (212) 514-5437